## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NICHOLAS HEATH WOOTEN, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT  1:18-cv-01378 |
| WELLS FARGO BANK, N.A., | |
| Defendant. | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, NICHOLAS HEATH WOOTEN ("Plaintiff"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, WELLS FARGO BANK, N.A. ("Wells Fargo") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227 and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA and 28 U.S.C. §§1331 and 1337 as the action arises under the laws of the United States.

3. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Wells Fargo conducts business in the Northern District of Illinois and a substantial amount of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

1

**PARTIES**

5.   Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, works professionally in the City of Chicago and spends approximately one-half of each month within the City of Chicago, which is situated in this judicial district.

6.   Defendant Wells Fargo is a banking institution with its principal place of business located at 101 N. Phillips Avenue, Sioux Falls, SD 57104. Wells Fargo is engaged in the business of extending credit and loans to consumers, including consumers in the State of Illinois. Wells Fargo is registered with the Illinois Secretary of State with a registered agent located in Illinois.

**FACTS SUPPORTING CAUSE OF ACTION**

7.   In approximately April of 2016, Plaintiff executed a consumer sales financing agreement with Wells Fargo for a consumer installment loan ("account" or "subject loan").

8.   At some point in time, Plaintiff defaulted on the subject loan.

9.   In January of 2017, Wells Fargo began calling the Plaintiff's cell phone number (ending in 2132), 1-3 times per day, seven days a week, in an attempt to collect the subject loan.

10.   Plaintiff never provided Wells Fargo with his cell phone number.

11.   Plaintiff never provided Wells Fargo consent to contact him on his cell phone number.

12.   Plaintiff's cell phone number has been registered with the national do not call registry with the Federal Trade Commission since April 1, 2005.

13.   When Plaintiff picked up these phone calls, a familiar scenario continually occurred; the Plaintiff would answer the phone, initially he would receive no response to his greeting, there would be a few seconds of dead air, an audible "click" or sound of static, followed by a person who would identify themselves as an employee of Wells Fargo (e.g. "this is Jane Doe from Wells Fargo calling for Nicholas Wooten.")

2

14. The first time that the Plaintiff spoke with a representative of Wells Fargo on his cell phone (in January 2017), Plaintiff asked Wells Fargo why it was calling his cell phone. In response, a representative of Wells Fargo advised Plaintiff that it was calling because the subject loan was in default.

15. The Plaintiff informed the Wells Fargo representative that he never provided Wells Fargo his cell phone number and asked how Wells Fargo acquired the number. In response, the Wells Fargo representative stated that he/she did not know how Wells Fargo acquired Plaintiff's cell phone number.

16. The Plaintiff further asked if the representative was simply working in collections and taking calls from an auto-dialer as part of a collections campaign. The representative responded that Plaintiff's understanding was correct.

17. The Plaintiff then requested that Wells Fargo cease calls to his cell phone. In response to Plaintiff's request, Wells Fargo's representative told Plaintiff that it was Wells Fargo's policy to call his cell phone as long as his account was in default.

18. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of a cellular telephone with the assigned number ending in 2132. Plaintiff is and has always been financially responsible for this cellular phone and its services.

19. Beginning in January of 2017, Wells Fargo placed 1-3 calls per day to the Plaintiff's cellular phone ending in 2132. Initially, these calls were placed from a number with an Iowa area code and Plaintiff's caller ID identified the caller as Wells Fargo. Wells Fargo made 1-3 calls a day to Plaintiff's cell phone from January 2017 through February 2018.

20. Sometime during the summer of 2017 the number that Wells Fargo was calling from changed from an Iowa area code to a toll free area code. However, the frequency of the calls persisted throughout 2017.

21. From January of 2017 to the present day, Wells Fargo has called Plaintiff 1-3 times daily. On the days that Wells Fargo calls once, it typically places its call to Plaintiff's cell phone in the middle of the day, usually during the noon hour. On the days that Wells Fargo calls twice, it usually called before 9:00 a.m. and after 3:00 p.m.

22. Throughout the period of time operative to the complaint, Wells Fargo called the Plaintiff's cell phone seven days a week consistently. Since the calls began, Plaintiff cannot recall a day that he has not received at least one phone call to his cell phone from Wells Fargo.

23. Each time the Plaintiff has spoken with a representative of Wells Fargo, they have confirmed the utilization of an auto-dialer to make calls to Plaintiff's cell phone and have declared their intention to call the Plaintiff's cell phone as long as the account was in default.

24. The calls to Plaintiff's cell phone served no purpose other than to harass Plaintiff. Despite asking Wells Fargo's representatives to cease calls to his cell phone, Wells Fargo has persisted in making these calls. These calls often interrupt the Plaintiff's work. They have also occurred at times both early and late enough in the day to wake Plaintiff from his sleep. The calls have disturbed business meetings, interrupted family gatherings and otherwise invaded Plaintiff's mental solitude through this pattern of repeated, unwanted and illegal calls.

25. Upon information and belief, Wells Fargo obtained Plaintiff's cell phone number through a third party, a method known as "skip tracing" in the collection industry.

26. Further, Wells Fargo knew or should have known that Plaintiff's phone number was a number assigned to a cell phone. This is because a company known as Telcordia Technologies,

4

Inc. d/b/a "iconnectiv" has maintained a database of all phone numbers in the United States since 2003. This database identifies whether any number is a land line or cellular number. The database is maintained in real-time to manage number portability as required by law since 2003. Upon information and belief, Wells Fargo subscribes to iconnectiv's database.

27. Upon information and belief, industry standards for telemarketing and debt-collection identify the use of the iconnectiv database as a real-time means to prevent unauthorized or inadvertent calls to cell phones by companies such as Well Fargo.

28. Upon information and belief, iconnectiv and its client wholesalers, lease and maintain access to the national number portability database so that any subscriber may definitively know whether any telephone number called is a land line or cellular number in real time. Use of this database is common in the industry and is known to be an inexpensive and straightforward administrative process commonly used in the debt collection industry to avoid calling cellular telephone numbers with an automatic telephone dialing system in violation of applicable federal and state laws.

29. Moreover, Wells Fargo has easy access to the national do not call registry and should have easily determined that Plaintiff's cell phone number ending in 2132 should not be called through the use of an automatic dialing telephone system.

30. Despite Plaintiff's requests not to be called on his cell phone number, despite the fact his number has been registered on the national do not call registry for more than ten years, and despite the fact that the industry provides a real time database identifying Plaintiff's phone number as a cell phone number, Wells Fargo repeatedly placed unwanted and illegal phone calls to Plaintiff's cell phone ending in 2132 through the use of an automatic telephone dialing system.

31. Notwithstanding the lack of consent to call Plaintiff and Plaintiff's repeated requests that the calls cease, Wells Fargo placed or caused to be placed between 900 and 1000 phone calls to Plaintiff's cellular phone from January of 2017 through the present day.

32. During the operative time frame, Plaintiff answered a number of calls and attempted to have the calls stopped. However, Wells Fargo's representatives always maintained that they had the right to call the Plaintiff on his cell phone as long as the account was in default.

33. Plaintiff's requests that Wells Fargo's phone calls cease fell on deaf ears and Wells Fargo continues to call Plaintiff on his cellular phone.

DAMAGES

34. Plaintiff has suffered and continues to suffer emotional distress, mental anguish, and anxiety as a direct result of the unlawful collection practices of Wells Fargo.

35. Wells Fargo's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

36. Plaintiff has been unduly inconvenienced and harassed by Wells Fargo's unlawful attempts to collect on the subject loan for over 12 months.

37. Wells Fargo's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, increased risk of personal injury resulting from the distraction caused by the calls, aggravation that accompanies unsolicited telephone calls, anxiety, emotional distress, mental anguish, decreased work productivity, increased usage of his telephone services, decreased battery life on his cellular phone, and diminished space for data storage on his cellular phone.

38. Plaintiff has been forced to retain counsel to end Wells Fargo's unlawful collection activities.

## COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

39. Plaintiff restates and realleges paragraphs 1 through 38 as though fully set forth herein.

40. The TCPA prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent. 47 U.S.C. §227(b)(1)(iii).

41. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

42. Upon information and belief, based upon the statements from various Wells Fargo representatives, the pause, or "dead air" and lack of prompt human response upon answering a call during the phone calls in which Plaintiff answered, Wells Fargo used a predictive dialing system to place calls to Plaintiff.

43. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

44. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

45. Upon information and belief, the predictive dialing system employed by Wells Fargo transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

46. Wells Fargo violated the TCPA by placing between 900 and 1000 non-emergency calls between January of 2017 and the present day to Plaintiff's cellular phone, using an ATDS without his consent. Any prior consent, if any, was revoked during the phone calls Plaintiff answered.

47. Specifically, Plaintiff revoked consent to be called on his cellular phone on the first call he answered (in January 2017) and in each subsequent answered call during the operative time period.

48. Moreover, Plaintiff's phone number ending in 2132 has been on the national do not call registry since April 1, 2005.

49. As pled above, Plaintiff was severely harmed by Wells Fargo's collection calls to his cellular phone.

50. Pursuant to 47 U.S.C. §227(b)(3)(B), Wells Fargo is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Wells Fargo's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff NICHOLAS HEATH WOOTEN requests that this Honorable Court:

a. Declare Wells Fargo's phone calls to Plaintiff to be a violation of the TCPA;
b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. §227(b)(3)(B)&(C); and
c. Award any other relief this Honorable Court deems equitable and just.

## COUNT II – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

51. Plaintiff restates and realleges paragraphs 1 through 38 as through fully set forth herein.

52. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely

upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

53. Plaintiff is a "person" as defined in ICFA, 815 ILCS 505/1 (c).

54. Plaintiff is a "consumer" as defined in ICFA, 815 ILCS 505/1 (e).

55. Wells Fargo is engaged in "commerce" in the State of Illinois with regard to Plaintiff and the subject loan as defined by ICFA, 815 ILCS 505/1(f). Wells Fargo specializes in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in their regular course of business.

**a. Unfairness and Deception**

56. It was unfair for Wells Fargo to seek to collect the subject loan from Plaintiff through endless phone calls to Plaintiff's cellular phone after Plaintiff requested that the calls cease on a number of occasions.

57. It was unfair for Wells Fargo to place calls to the Plaintiff's cell phone while Plaintiff's cell phone number was registered with the national do not call registry.

58. It was unfair for Wells Fargo to knowingly place calls to Plaintiff when he was at work thereby frustrating his ability to perform his work.

59. It was unfair and deceptive for Wells Fargo to misrepresent to Plaintiff that the only way to stop the calls was for Plaintiff to cure the default on the subject loan.

60. Wells Fargo has bullied Plaintiff into near submission via unfair conduct through its never-ending harassing phone calls.

61. The phone harassment campaign Wells Fargo has unleashed and continues to unleash on Plaintiff is against public policy, immoral, unethical, and oppressive.

62. As pled above, Plaintiff was severely harmed by Wells Fargo's unfair conduct.

63. Upon information and belief, Wells Fargo systematically places harassing phone calls to consumers in Illinois in order to induce payment on outstanding debts after the consumers have requested that Wells Fargo cease its calls.

64. Upon information and belief, placing unwanted harassing phone calls to consumers is an unfair business practice willfully employed by Wells Fargo and is done on a mass scale.

65. An award of punitive damages is appropriate because Wells Fargo's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Plaintiff and Illinois residents, generally, and Plaintiff had no choice but to submit to the continued harassing phone calls.

WHEREFORE, Plaintiff NICHOLAS HEATH WOOTEN requests that this Honorable Court:

a. Enter judgment in his favor and against Wells Fargo;
b. Award Plaintiff his actual damages in an amount to be determined at trial;
c. Award Plaintiff punitive damages in an amount to be determined at trial;
d. Award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: February 23, 2018        Respectfully Submitted,

/s/ Mohammed O. Badwan

Mohammed O. Badwan, Esq. ARDC#6299011
*Counsel for Plaintiff*
Sulaiman Law Group, LTD
2500 S. Highland Ave., Suite 200
Lombard, Illinois 60148
Phone (630) 575-8180
Fax (630) 575-8188